LASTINGER et al. v, TOYAH VALLEY IRR. CO. et al. (No. 330.)

(Court of Civil Appeals of Texas. El Paso. May 28, 1914.)

1. PLEADING (§ 214*)—DEMURRER—EFFECT.

A general demurrer admits the truth of the allegations of a petition.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 525–534; Dec. Dig. § 214.*]

2. CONSTITUTIONAL LAW (§ 81*)—POLICE POWER—GOVERNMENTAL REGULATIONS.

Property which receives a right or privilege from the government and is used in dealing with the public is a legitimate subject for reasonable governmental regulations.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148; Dec. Dig. § 81.*]

3. WATERS AND WATER COURSES (§ 261*)—IRRIGATION DITCHES—CONTROL.

Both at common law and under Rev. St. 1911, art. 5002, providing for the formation of corporations to construct irrigation ditches, that such corporations may make contracts for the sale of permanent water rights, that all persons owning or holding a possessory right or title to land adjoining any canal or ditch, who shall have secured a right to the use of water, shall be furnished with water in accordance with the terms of his contract, that surplus water not contracted to others shall be furnished to such persons at reasonable and just prices, and that, in case of drought, the water shall be divided among all consumers pro rata, it is the duty of an irrigation company, regardless of contract, to furnish to those in possession of land, water necessary for the irrigation of crops, and the company is liable for damages caused by its failure.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 261.*]

4. WATERS AND WATER COURSES (§ 261*)—IRRIGATION COMPANIES—CONTRACTS.

Where an irrigation company contracts with a landowner to furnish water, the contract is presumed to have been made in contemplation of Rev. St. 1911, art. 5002, providing that water shall be furnished to the owner or possessor of land which can be supplied, and hence the tenant in possession may recover damages suffered by the company's failure to furnish water according to contract.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 261.*]

Appeal from Reeves County Court; H. N. McKellar, Judge.

Action by E. G. Lastinger and another against the Toyah Valley Irrigation Company and others. From a judgment dismissing the petition, plaintiffs appeal. Reversed and remanded.

Hefner & Cooke, of Pecos, for appellants. Ross & Hubbard, of Pecos, for appellees.

McKENZIE, J. Appellants, E. G. Lastinger and G. W. Gathings, Jr., sued appellee Toyah Valley Irrigation Company and J. G. Love, receiver of said irrigation company, in the county court of Reeves county, for damages to their crops for failure to furnish water for irrigation. Upon trial a general demurrer was sustained to plaintiff's petition. Plaintiffs refused to amend, and the cause was thereupon dismissed by the trial court. From the judgment of dismissal, plaintiffs have appealed.

Plaintiff's petition is substantially as follows:

"(2) That, at the times hereinafter mentioned, one D. A. Gathings was the owner of certain lands situated in the arid portion of the state of Texas; by reason of insufficient rainfall, irrigation is beneficial and necessary for agricultural pursuits.

"(3) That Toyah creek is a natural water course in Reeves county, Tex., in that it is a running and flowing natural stream of water, having a well-defined channel with banks and bed, and furnishes a sufficient quantity of water to supply the lands riparian to it and its natural channel with a reasonable quantity of water for irrigation and for domestic purposes; that said Toyah creek runs through said lands, * * * and said lands are riparian to said stream and entitled to share proportionably in all the waters flowing therein for domestic and agricultural purposes.

"(4) That said defendant Toyah Valley Irrigation Company is organized under the laws of the state of Texas as an irrigation company for the purpose of constructing, maintaining, and operating canals, ditches, flumes, feeders, laterals, reservoirs, dams, lakes, and wells, and of conducting and transferring water to all persons entitled to the same for irrigation, and is a common carrier for hire of the waters of Toyah creek to all of the riparian lands entitled to water from said stream for irrigation, and has constructed over, across, and upon said lands above-described canals, ditches, and laterals for the purpose of conveying waters of said stream to the various lands entitled thereto, including the lands hereinabove described.

"(5) That heretofore, to wit, on or about June 1, 1908, the said D. A. Gathings, the owner of said land above described, made and entered into a certain water contract with the defendant Toyah Valley Irrigation Company, a substantial copy of which is hereto attached, marked Exhibit A, and made a part hereof by this reference, whereby, in consideration of an annual rental at the rate of $1.50 per acre per annum for each 65,340 cubic feet of water per acre annually, defendant company bound itself to carry and deliver to said lands above described annually the pro rata share of the water of Toyah creek to which said lands were entitled, estimated and represented in said contract to be 65,340 cubic feet of water for each and every acre of land therein described. Said contract further provides that said Toyah Valley Irrigation Company shall properly maintain and enlarge its ditches from time to time as shall be necessary to furnish the flow of a sufficient amount of water to irrigate all the lands that it undertakes to deliver water to, the deliveries to be made in regular turn, and that said irrigation company may contract to deliver water to other persons, but in that event the water shall be delivered to each person in regular turn, and that such water contracted to be delivered belongs to said land by reason of its riparian character, and said contract constituted and formed a valuable appurtenance or easement running with said land, to the benefits and provisions of which plaintiffs became entitled under and by virtue of their lease contract hereinafter set forth.

"(6) That relying upon said contract and the duty and obligation of the defendant company, as a common carrier of water for hire, to deliver to said lands the full pro rata share of the waters of Toyah creek to which said lands were entitled, as provided in said water contract, plaintiffs in the spring of 1911 entered into a verbal lease contract with the said D. A. Gathings, whereby plaintiffs agreed to lease and did

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

lease from the said D. A. Gathings said lands above described for the said year 1911, together with all the rights of the said D. A. Gathings under and by virtue of said water contract above described, and immediately entered into possession of said lands and said rights, and by reason thereof the defendant company became bound to furnish to plaintiffs said water in accordance with its said agreement and contract. That, under the terms of said lease contract, plaintiff agreed to properly plant, cultivate, water, harvest, and market the crops grown upon said lands and to account to the said D. A. Gathings for one-half of the alfalfa and millet and one-third of the maize to be produced upon said land during said year 1911; said plaintiffs to receive one-half of said alfalfa and millet and two-thirds of the maize produced thereon.

"(7) Plaintiffs further allege that they and the said D. A. Gathings have at all times complied with the said water contract, have erected and maintained laterals for the reception and distribution of water thereon, and have at all times paid and tendered payment for said waters to the defendant company in accordance with the provisions of said contract; and, relying upon the provisions of said water contract and the legal duties and obligations of the defendant company, plaintiffs in the said year 1911 prepared said lands for cultivation and cultivated same, as hereinafter fully appears.

"(8) That plaintiffs in the spring of 1911, in farmerlike manner, prepared said lands and planted thereon the following crops: [We omit description of crops planted.] That said crops would have produced had defendant company complied with its said contract and its legal duties and obligations, and delivered water according to the terms thereof, the following yields: [Statement omitted.] That by reason of the failure and refusal of the defendant company to comply with its said contract and duty, as hereinafter alleged, said crops only produced as follows: [Statement omitted.] That by reason of the default and failure of the defendant company in the performance of its obligations, as hereinafter specifically alleged, the yields of said crops were depreciated in the following amounts: [Statement omitted.] That the market value of said crops at the time and place same would have been harvested and in the community same would have been raised was as follows: [Statement omitted.] That the additional expense that would have been incurred by plaintiffs in cultivating, irrigating, harvesting, and marketing said crops, had the defendant furnished water for their raising, as it was in duty bound to do, would have been as follows: [Statement omitted]—leaving a net loss and damage to plaintiffs, by reason of the acts of the defendant company, of $592.89.

"(9) Plaintiffs show that defendant company did not carry out and perform its said contract or its duties and obligations thereunder and under its common-law and statutory duty as a common carrier of water for hire, but failed and refused to deliver to plaintiffs in their turn, or to the land hereinabove described in its turn, the water to which they and their said lands were legally entitled during the year 1911, and only delivered a portion thereof, and wrongfully discriminated against plaintiffs and wrongfully appropriated and converted their water, as hereinafter more specifically alleged, and by reason thereof caused the damage and injury to plaintiff, hereinabove set forth.

"(10) That on or about July 30, 1911, the defendant, by its agent and manager, informed plaintiffs that the defendant company would not furnish them their pro rata part of the waters of Toyah creek in their turn, and would not furnish water for their alfalfa crop but would permit them to water their maize only, and would thereafter furnish them water in case there should be a surplus after supplying the other users of water, and so informed the lessor of plaintiffs D. A. Gathings. That plaintiffs continued to cultivate said crops and to protest and complain of said threatened action of the defendant company, and informed said defendant that such discriminatory action on its part would ruin their crops in case there should not be water delivered to them in their turn for irrigation. Plaintiffs allege that the defendant company delivered water to them in their turn on or about July 31, 1911, but only permitted them to water one crop of maize on the said 19 acres above set forth, and refused to permit them to water the young crop of maize on the 14 acres above set forth, and refused to permit them to water the said crop of alfalfa; that it was their turn at said time to water all of said crops, but defendant, though it permitted other landowners similarly situated to water their entire crops in their turn, wrongfully discriminated against plaintiffs and refused to permit them to water all of their crops; that it again became plaintiffs' term to water all of their crops within three or four weeks thereafter, to wit, on or about August 20, 1911, and their said crops aforesaid required an irrigation for their preservation and cultivation on or about said time and at their regular turn, but defendant failed and refused to deliver any water to plaintiffs thereafter until on or about September 14, 1911; that said time was during the heat of summer and at a time when said crops required the water for their preservation; that between said August 20, 1911, and September 14, 1911, on account of the neglect, failure, and refusal of defendant company to furnish water for irrigation, plaintiffs' said maize crops became almost entirely destroyed and the cutting of alfalfa damaged, as hereinabove specifically set forth; that thereupon plaintiffs, seeing that further labor upon said crops would be practically fruitless, as no crops could be raised thereon in view of the action of said irrigation company, after harvesting such millet, maize, and alfalfa as was produced thereon, left said land and surrendered same to their lessor, D. G. Gathings. Plaintiffs further show that their pro rata share of the water of said Toyah creek for the year 1911 amounted to approximately 24 acre inches for each acre of said land, or 87,120 cubic feet per acre, but defendant wrongfully withheld, appropriated, and converted and refused to deliver to plaintiffs their pro rata share of said water, but only delivered to plaintiffs approximately one-half thereof, to wit, 12 acre inches, of 43,-560 cubic feet per acre, although it delivered to other water users under its ditches, of equal right and similarly situated with plaintiff, the full pro rata amount, or 24 acre inches, and wrongfully discriminated against plaintiffs, both in the quantity of water delivered to them and in times at which said was delivered.

"(11) That all of said crops hereinabove described would have been harvested and marketed on or before December 1, 1911; that, by reason of the premises, plaintiffs have been damaged by the acts of the defendant company in the sum of $592.89, with interest thereon from December 1, 1911, at the rate of 6 per cent. per annum. * * *"

The "Water Contract, Exhibit A," referred to in the petition, is as follows:

"The State of Texas, County of Reeves.

"This indenture and agreement made and entered into this 1st day of June, 1909, by and between the Toyah Valley Irrigation Company, hereinafter called the first party, and D. A. Gathings, the second party, witnesseth:

"That in consideration of the faithful performance by the second party of his obligations hereinafter stated, the Toyah Valley Irrigation Company obligates and binds itself from this date to April 1st, 1957, to annually carry and convey through its main ditches in Reeves county, Texas, and to deliver to second party at various points to be designated by the Toyah

Valley Irrigation Company and accessible to the lands herein described, into lateral ditches constructed and maintained by second party, 65,430 cubic feet of water per acre for the irrigation of each acre of land hereinafter described; the said water belongs to the land hereinafter mentioned and flows from the head spring on Toyah creek, Saragosa springs and other sources and is to be delivered through the ditches controlled by the Toyah Valley Irrigation Company and into the lateral ditches of the second party; after said water leaves the ditches controlled by said irrigation company, it shall be carried, conveyed and 'distributed' by second party to the lands of second party by means of the lateral ditches constructed and maintained by the second party.

"The second party agrees to pay the Toyah Valley Irrigation Company for the annual delivery to him (the said second party) at said accessible points to the lands of the second party of 65,340 cubic feet of water per acre for the irrigation of each of said acres of land of the second party, the sum of $1.50 for each acre annually, payable in advance as hereinafter stated, said annual charges of $1.50 per acre to be divided into two equal payments of $0.75 each, both said payments to be made at the office of said irrigation company at Balmorhea, Texas, one payment of $0.75 to be paid in advance on the 1st day of June of each year for the period of time from June 1st to December 1st, and the other payment, of $0.75 to be paid in advance on the 1st day of December of each year, for the period of time from December 1st, to June 1st, said payment to be made during the full period of time from this date to April 1st, 1957, and the said annual charge of $1.50 per acre is secured by statutory lien on the crops on said lands.

"The annual charge for the delivery of the water aforesaid shall be paid by second party in advance as stated to the Toyah Valley Irrigation Company whether said water is or is not used, if said irrigation company offers to deliver said water, and this contract constitutes a continuous offer by said irrigation company to deliver said water until written notice to the contrary is given by said irrigation company to second party. Said water is not owned or claimed by said irrigation company, and if for any reason or from any cause there is a shortage of water said irrigation company shall have the right to pro rata said water flowing from the head springs of Toyah creek, Saragosa springs and other sources, among the parties entitled to said water in proportion in which they are entitled; and if there is a shortage of water the second party shall receive a pro rata rebate thereof to be applied as a credit in his favor on said annual toll, such rebate to be calculated on said basis of $1.50 for each said 65,340 cubic feet of water per acre per annum.

"The second party agrees to construct and maintain the necessary waste ditches to convey back to the canal of said irrigation company, if feasible from an engineering standpoint, all the waste water that flows on the land of the second party. The second party shall be responsible for his waste water flowing upon or in any manner injuring the property of any other person.

"The second party agrees to grant the necessary rights of way for all canals and ditches over his lands to said irrigation company, including right of way for such waste ditches as may be constructed by said irrigation company and the necessary roadways that may be necessary for the proper handling and distributing of water by said irrigation company.

"The second party obligates himself to conform to all rules and regulations established by said irrigation company and accept his water at the times designated by said irrigation company and to confine the use of said water to the irrigation of the land mentioned in this contract, for the stock kept thereon and for domestic purposes, and to promptly notify said irrigation company when he has received enough water at any time for the proper irrigation of lands entitled to said water. And second party obligates himself to avoid waste, and agrees that if he or any of his employés permit the same to be wasted or used for any purpose not named in this contract, said irrigation company may shut off its supply and not permit the same to be used again until the regular turn of second party. Said irrigation company may contract to deliver water to other persons but, in such event water shall be delivered to each person in regular turn.

"The Toyah Valley Irrigation Company stipulates and agrees to properly maintain and enlarge its ditches from time to time as may be necessary to furnish the flow of a sufficient amount of water to irrigate all of the land that it undertakes to deliver water to, the deliveries of water to be made in regular turns and under the rules and regulations made by said irrigation company. The manner of withdrawing and regulating the supply of water from the canals of said irrigation company shall be prescribed by said irrigation company and shall forever be under its control and management.

"It is expressly understood that the Toyah Valley Irrigation Company is a common carrier of water and that it has only undertaken to convey through the ditches controlled by it to the land mentioned in this contract the water that such land is entitled to, which the second party has asserted to be 65,340 cubic feet of water per annum for each of the acres of land mentioned in this contract, and which said water the landowner claims to belong to said land, but in the event there is a shortage of water as hereinabove mentioned, then said irrigation company shall be required to convey through the ditches controlled by it to the land mentioned in this contract the proportionate part of the water to which said land is entitled.

"The land referred to in this contract to which the said irrigation company is to deliver water is described in Exhibit A, hereto attached and made a part hereof, the said exhibit being identified by the name of the parties to this contract being written thereon. * * * "

The contract appears to have been duly executed.

[1] By the first assignment of error and the proposition thereunder, appellants submit that the petition states a good cause of action, and the trial court erred in sustaining the general demurrer. Admitting the averments of the petition to be true, as is required in determining its sufficiency upon the general demurrer, the allegations are sufficient to charge appellee irrigation company with being a public service irrigation corporation, created under and by virtue of the laws of the state of Texas. Imperial Irrigation Co. v. Jayne, 104 Tex. 395, 138 S. W. 575; Borden v. Irr. Co. (Civ. App.) 82 S. W. 461; Id., 98 Tex. 494, 86 S. W. 11, 107 Am. St. Rep. 640; Colorado Canal Co. v. McFarland & Southwell (Civ. App.) 94 S. W. 400; Id., 50 Tex. Civ. App. 92, 109 S. W. 435. As such, it is bound by law to perform reasonable duties and submit to reasonable restrictions. Weill on Waters (3d Ed.) § 1262.

[2, 3] Generally speaking, it may be said that property which receives a right or privilege from the government, and of which use is made in dealing with the public, becomes a legitimate subject for a reasonable govern-

mental regulation. In Weill on Water Rights (3d Ed.) § 1247, it is said:

"The common law of public service agencies is, since Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, familiar, being, in general terms, that property devoted to the public service or use is affected with the public duty of performing reasonable service to all; that, to secure this end, rates and terms of service must be reasonable, and service is compulsory upon tender of a reasonable rate; that no unreasonable conditions may be required of consumers; that there must be no discrimination; that the courts will enforce these things, and it needs no statute to give them the power."

Section 11 of the act of 1895 (Laws 1895, c. 23; article 5002, Revised Civil Statutes of Texas 1911) provides:

"Corporations may be formed and chartered under the provisions of this act and of the general corporation laws of the state of Texas, for the purpose of constructing, maintaining and operating canals, ditches, flumes, feeders, laterals, reservoirs, dams, lakes and wells, and of conducting and transferring water to all persons entitled to the same for irrigation, mining, milling, to cities and towns for waterworks, and for stockraising, and for the purpose of building storage reservoirs for the collection and storage of water for the purposes before mentioned. All such corporations shall have full power and authority to make contracts for the sale of permanent water rights, and to have the same secured by liens on the land or otherwise, and to lease, rent or otherwise dispose of the water controlled by such corporation for such time as may be agreed upon, and in addition to the lien on the crops hereinafter provided for, the lease or rental contract may be secured by a lien on the land or otherwise. All persons who own or hold a possessory right or title to land adjoining or contiguous to any canal, ditch, flume, or lateral constructed and maintained under the provisions of this act, and who shall have secured a right to the use of water in said canal, ditch, flume, lateral, reservoir, dam or lake, shall be entitled to be supplied from such canal, ditch, flume, lateral, dam or lake with water for irrigation of such land, and for mining, milling and stockraising in accordance with the terms of his or their contract: Provided, that if the person, association or corporation owning or controlling such water, and the person who owns or holds a possessory right or title to land adjoining or contiguous to any canal, ditch, flume or lateral constructed and maintained under the provisions of this act, fail to agree upon a price for a permanent water right, or for the use or rental of the necessary water to irrigate the land of such person and for mining, milling and stockraising, such person, firm, association or corporation shall, nevertheless, if such person, firm, association or corporation has or controls any water not contracted to others, furnish the necessary water to such person to irrigate his lands, and for mining, milling and stockraising, at such prices as may be reasonable and just: Provided, further, that, in case of shortage of water from drought, accident or other cause, the water to be distributed shall be divided among all consumers pro rata, according to the amount he or they may be entitled to, to the end that all shall suffer alike, and preference be given to none. The sale of the permanent water right shall be an easement to the land and pass with the title thereof; and the owner thereof shall be entitled to the use of the water upon the terms provided for in his or their contract with such person or corporation, or in case no contract is entered into, then at just and reasonable prices. Any instrument of writing providing a permanent water right shall be admitted to record in the same manner as other instruments relating to the conveyance of land."

It was charged in the petition that the appellants have and are entitled to the possessory right of the lands, this by virtue of being the tenants of D. A. Gathings, the owner of the lands; and it is also clear from the allegations of the petition that the land is so situated as to be entitled to the waters from the appellee's canals. In Borden v. Irrigation Co., 82 S. W. 461, supra, in construing the last-mentioned article of the statute, it is there said:

"We think this section of the act (article 3125 of the Revised Statutes of 1895), when fairly construed, reserves in the public, or that portion of the public owning land adjoining or contiguous to an irrigation canal constructed and maintained under the provisions of said act, a definite right to the use of the water in such canal, and imposes upon the corporation such reciprocal duties to the public as to make such corporation quasi public in character, and charge it with a public trust. The clause in the second paragraph of the article, which gives the corporation the right to contract for the sale of permanent water rights, when considered with other portions of the article, should not be construed as authorizing the sale to any one person of a permanent right to more than his proportionate share of the water furnished by the canal. The article, when considered as a whole, evidences an intention on the part of the Legislature to prevent discrimination by the corporation in the sale and distribution of water, and expressly provides that, if the corporation and the landowner fail to agree upon the price to be paid for the water, the landowner shall nevertheless be entitled to the water at such prices as may be reasonable and just, provided the corporation controls water not contracted to others."

Independent of the contract, then, we find that it is the duty of the irrigation company to furnish water to the parties in possession of the land for the irrigation of the crops, failing which, the irrigation company is liable for such damages as were suffered by reason of its failure to perform its obligations to the tenants of the land. This is made so by the statute, and we are of the opinion that it is so at common law, independent of the statute.

[4] Appellants also contend that they are entitled to recover from appellee by virtue of the original contract, which the appellee irrigation company had entered into with their landlord, which contract is set out in full, as a part of the plaintiff's original petition.

Appellees contend, on the other hand, that the appellants should not be permitted to recover upon the contract, because there is no privity of contract as between them. In construing the contract in question, we hold that when the appellee irrigation company contracted with D. A. Gathings, the owner of the land, it did so in contemplation of the statute, and the statute therefore became a part of the contract, and the tenants of the landlord, being in lawful possession of the land, by virtue of the terms of the statute, became privies with the irrigation company in the contract. Under the terms of the statute, it is the duty of the irrigation company to furnish water to the party in pos-

session of the land, and, the contract having been made when this statute was in force and effect, the statute became as much a part of the contract as though it had been specifically set forth therein. The statute itself authorizes the making of such contracts, and as to whether this contract gives the owner of the land a permanent water right need not now be decided.

The contract, as made, however, gives a lien upon the crops raised upon the land to secure the payment of the water rental; this irrespective of the parties who may cultivate the land. Other provisions of the contract, apparently, are in terms of the statute, and should be construed accordingly, taking the statute as a part thereof. To hold otherwise would render such contract of little practical value to the owner of land, when such lands are entitled to the benefit of the water of the irrigation company, and would defeat the purpose and intent of the statute.

What has been said in considering the first assignment of error disposes of the other two assignments. We are of the opinion that the general demurrer should have been overruled, and accordingly this cause is reversed and remanded.

Reversed and remanded.